# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-0589V
UNPUBLISHED

| | |
|---|---|
| PATRICIA MERSON,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: August 16, 2022<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Onset; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Ronalda Elnetta Kosh*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On April 25, 2018, Patricia Merson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine she received on November 15, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Ruling and Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the ruling and decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below I find that Petitioner is entitled to compensation, and I award damages in the amount $45,000.00, representing compensation for her actual pain and suffering, plus $257.28 for her unreimbursable medical expenses for a total of **$45,257.28.**

## I. Relevant Procedural History

On April 25, 2018, Ms. Merson filed her petition and medical records marked as exhibits 1-4. ECF No. 1. The next month, she filed two witness affidavits (exhibits 5-6) with a Statement of Completion. ECF Nos. 6-7. The parties thereafter made some efforts at settlement, but determined by March 2019 that this would not be possible. ECF No. 25.

On June 21, 2019, Respondent filed his Rule 4(c) Report. ECF No. 27. Respondent recommended against awarding compensation to Petitioner in this case, arguing, *inter alia*, that the record was insufficient to substantiate that the onset of Petitioner's left shoulder symptoms began within 48 hours of vaccination. *Id*. at 7. Respondent argued that Petitioner first reported her shoulder symptomatology to a medical professional nearly five months after vaccination. *Id.* citing Ex. 2 at 1. Thus, "[a]lthough the medical records note that petitioner's pain began 'after' vaccination, those reports are vague, and nothing more than a record of petitioner's oral statements. No doctor actually opined that petitioner's November 15, 2016 flu vaccination was the cause of the alleged injury." *Id*. at 7-8.

On February 11, 2020, I held a fact hearing in this matter, finding that there was preponderant evidence that Petitioner's left shoulder pain began within 48 hours of vaccination. ECF No. 46. Thereafter, in light of my ruling, I strongly encouraged the parties to consider informal resolution of this claim. But the parties (again) were unable to do so, leading me to establish a schedule for briefing the issue of entitlement and damages. ECF No. 61. The parties have now filed their respective briefs, and the case is ready for resolution in full.

## II. Factual Evidence

### A. Medical records

Ms. Merson (age 67) received a flu vaccine in her left shoulder on November 15, 2016, at Walgreens Pharmacy located in Rosedale, Maryland. Ex. 1. Petitioner has stated

2

that prior to vaccination, she was not followed by a primary care physician or any specialists, as she was generally healthy.[3] Ex. 9 at 1.

On March 10, 2017 (and thus nearly four months post-vaccination), Ms. Merson presented to her psychiatrist, Dr. Allan Gold, for a routine visit. Ex. 10 at 3-4. She reported "a shooting burning pain in her left arm that began with the sudden reaching to catch a falling dog a month or so ago, it recurs with such reaching, lasts for seconds . . . She sleeps hugging a pillow on that side . . . She is a[]verse to meds, surgery, shots . . ." *Id*. at 4. Dr. Gold noted that Petitioner's left shoulder issue may be "brachial neuritis . . . vs. cervical arthritis of disc compression." *Id*.

A month later – and now five months after vaccination - on April 10, 2017, Ms. Merson presented to Mary Hartman, ARNP-F, at True Care for a Medicare Wellness exam and a complaint of left arm pain.[4] Ex. 2 at 1. The notes from this visit state that Petitioner was "trying to find out what is wrong with [her] arm" and that she thinks she has "nerve damage" from the flu shot." *Id.* Ms. Merson reported pain in the back of the shoulder and upper arm, some reduced range of motion, numbness, and tingling that started after she got her flu shot in November. *Id*. Ibuprofen was sometimes effective for the pain, but she was not driving because of her arm.[5] *Id.* Upon examination of her left shoulder, Ms. Merson exhibited a limited range of motion ("ROM") when lifting her arm above her head. *Id.* She was referred for a nerve conduction study for "burning pain left shoulder radiating to hand."[6] *Id.* at 4.

On April 18, 2017, Ms. Merson presented to Dr. Charles Simmons at Smart Pain Management for an initial evaluation for complaints of left arm numbness at a pain level of "2/2." Ex. 3 at 4. Petitioner reported that her "pain started shortly after a flu shot into her left shoulder." *Id*. She denied weakness. *Id*. The assessment stated, "pain radiating to left shoulder, left shoulder pain, adhesive capsulitis of shoulder, and paresthesia of hand." *Id*. Dr. Simmons ordered an MRI and recommended a left shoulder steroid injection. *Id.* at 5.

---

[3] Petitioner's medical records do indicate, however, that her prior medical history consists of anxiety with panic attacks, depression, elevated blood pressure, hyperlipidemia, pre-diabetes, anemia, kidney stones and renal insufficiency with no history of pre-vaccination shoulder problems. Petitioner has filed redacted copies of notes from visits with her psychiatrist, Dr. Gold. Ex. 10.

[4] As a result of Petitioner's complaint of left arm pain, the wellness exam was not performed. *Id*. at 2-3.

[5] Petitioner stated that she is right handed.

[6] Petitioner never underwent the EMG study.

On May 8, 2017, Ms. Merson underwent an MRI of her left shoulder at Advance Radiology for complaints of chronic pain syndrome, pain, and decreased ROM in the left shoulder for the past six months. Ex. 3 at 6. The MRI showed (1) a small bursal-sided near full-thickness tear of the distal anterior infraspinatus tendon, (2) mild interstitial tearing and tendinosis and undersurface fraying of the of distal supraspinatus tendon, (3) mild tendinosis of the subscapularis tendon, (4) tendinosis of the intra-articular long head of the biceps tendon extending to the anchor, (5) trace subacromial subdeltoid bursitis, (6) mild AC joint osteoarthritis, and (7) mild glenohumeral joint osteoarthritis, including degenerative fraying or degenerative tearing of the superior labrum. *Id*. at 6-7.

On May 23, 2017, Ms. Merson returned to Dr. Simmons for a follow-up of "left arm numbness and shoulder pain" and to review the results of the MRI. Ex. 2 at 2. Upon review of the MRI, Dr. Simmons's assessment noted chronic pain syndrome, degenerative joint disease of the left shoulder region, and full thickness rotator cuff tear. *Id*. at 3. Dr. Simmons referred Ms. Merson to a physical therapist and asked her if she would consider steroid injections in the near future. *Id*. Petitioner did not attend any physical therapy sessions and did not receive any steroid injections. Ex. 4. She elected to proceed with a home exercise program, heating pads, and Motrin. *Id*.

The next set of records are dated one year later, on May 16, 2018, where Ms. Merson presented to Dr. Robert Greenwald at the emergency room at MedStar Franklin Square Hospital Center for complaints of depression, fever, coughing, and abdominal muscle pain from coughing for six days. Ex. 7 at 12. She was diagnosed with cough, fever, renal insufficiency, and a urinary tract infection. *Id*. at 14, 35. Upon physical examination, Ms. Merson was able to move all of her extremities equally, and she denied musculoskeletal symptoms. *Id.* at 6, 13.

### B. Affidavits

In her affidavit, Ms. Merson averred that immediately after vaccination she began to experience pain in her left arm and shoulder. Ex. 4 at 1. She stated that she "kept thinking that the pain in my shoulder would improve" which is why she delayed seeking treatment. *Id*. She finally scheduled an appointment at True Care Medical Group when she reached for a railing as she was going down some steps and almost fell. *Id*. Dr. Simmons discussed managing her pain with steroid injections and narcotic medication, both of which she was uncomfortable pursuing. *Id*. She elected to treat her shoulder at home with exercises, heating pads, ice packs, and Motrin. *Id.* Ms. Merson stated that she has suffered the residual effects or complications of her alleged SIRVA injury for more than six months and "still experiences pain to this day." *Id*.

4

Petitioner's husband, Richard Merson, averred in his affidavit that "[i]mmediately after receiving the flu vaccine, my wife began to complain of pain in her left shoulder." Ex. 5 at 1. Mr. Merson explained that he and his daughter suggested that Petitioner see a doctor for her shoulder injury. He stated that

> [s]he resisted at first as she does not have a regular primary care provider and has fortunately been very healthy. However, as she was walking down the stairs in our home one day, she reached for the railing for balance. The pain in her shoulder was so intense that she almost fell down the stairs.

*Id*. at 1-2. Mr. Merson further stated that "[f]inally, after months of pain and suffering, she made an appointment. In April of 2017, she was seen by Dr. Simmons at Pain Management …" *Id*. at 2.

Ms. Dawn Merson ("Dawn"), Petitioner's daughter, stated in her affidavit that she was present with Petitioner when Petitioner received the flu vaccine on November 15, 2015, at Walgreens Pharmacy. Ex. 6 at 1. Dawn recalled that her mother complained about how painful the shot was after the pharmacist administered the vaccine. *Id*. Dawn stated that the pharmacist "told my mother it was because her arm was way bony." *Id*. She stated that as soon as they arrived home that day, her mother immediately took Motrin. *Id*. Dawn explained that she lives at home with her parents and over the next few months, her mother continued to complain of pain in her shoulder. *Id*. Dawn stated that she and her father finally convinced Petitioner to see a doctor. Dawn stated

> [m]y mother is not quick to seek medical treatment and is generally very healthy… My mother finally decided that she would in fact make an appointment after she almost fell down the stairs in our home. That day, when my mother grabbed the railing to support herself going down the steps, she experienced what she described as a searing hot pain in her shoulder that burned all the way into her hand. She sat on the steps and cried for a long time.

*Id*. at 2.

### III. Parties' Arguments

Petitioner requests that I issue a ruling finding that she is entitled to compensation in this case. Mot. at 1. She avers that she meets the requirements for a SIRVA as described in the Vaccine Injury Table, and thus is entitled to a presumption of causation. Mot. at 6-8. In the alternative, Petitioner argues that if a Table injury is not found, she has satisfied the three-prong test for establishing causation as set forth in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). Respondent argues that

5

Petitioner has failed to show she suffered a Table claim because her pain and reduced range of motion are not limited to her left shoulder and that there may be an alternate cause. Opp. at 9-13. Respondent also argues that Petitioner has failed to establish causation under a causation-in-fact analysis and that she has not shown that she suffered from a vaccine-related injury for a minimum of six months. Opp. at 13.

## IV.     Fact Findings and Ruling on Entitlement

A fact hearing was held in Washington, D.C., on February 11, 2020. Petitioner and her daughter, Dawn Merson, were the sole witnesses, and they both appeared in-person. At the conclusion of the hearing, I ruled that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination. Thus, that element of a SIRVA Table claim has already been successfully established by the Petitioner.

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[7] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;

---

[7] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

6

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381 at 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may

7

be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs*., 110 Fed. Cl. 184 at 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA (in addition to the onset element, which as noted above has already been found to be satisfied).

#### 1. Petitioner has no Prior Left Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent has not contested that Petitioner meets this criterion, and I find that the medical record demonstrates a lack of history of pain, inflammation, or dysfunction of Petitioner's left shoulder that would explain her symptoms. Thus, the first criterion is met.

#### 2. Petitioner's Pain and Limited Range of Motion was Limited to her Left Shoulder

The specific language of a SIRVA injury contained in the Qualifications and Aids to Interpretation ("QAI") of the Vaccine Injury Table is that "pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered." Looking closely at the medical records and Ms. Merson's complaints, her complaints of pain and reduced range of motion all relate to her left shoulder and upper arm, not her hand. She was diagnosed with adhesive capsulitis or "frozen shoulder", a condition affecting the joint capsule of the shoulder and the peripheral articular cartilage of the shoulder. Ex. 3 at 4; *Dorland's Illustrated Medical Dictionary E-Book*. London: Saunders,

2011. The MRI of Petitioner's left shoulder confirmed shoulder abnormalities including a small bursal-sided near full-thickness tear, tendinosis, and subdeltoid bursitis, all conditions that affect the shoulder musculature. Ex. 3 at 6-7. The recommended treatment for Ms. Merson's symptoms were treatments prescribed for the shoulder only, such as a left shoulder steroid injection and physical therapy. Ex. 3 at 5.

The complaints affecting Ms. Merson's hand and the lower part of her left arm consisted of complaints of *numbness* and *paresthesia*, not pain and not reduced range of motion. *See e.g.,* Ex. 3 at 4 ("1. Pain radiating to left shoulder… 2. Shoulder pain – left … Adhesive Capsulitis of shoulder … Paresthesia of hand…").  Respondent also cites to Mr. Merson's affidavit quoting that his wife "constantly complained of pain in her arm and shoulder along with numbness in her hand." Opp. at 10. The one reference of pain radiating to the hand, written by Nurse Hartman, stated that there was "burning pain, left shoulder radiating down to hand", Ex. 2 at 4, inferring that the pain originated in the shoulder. During her testimony, Ms. Merson also stated that the pain began in her shoulder and led to numbness in her hand. Transcript ("Tr.") at 16, 37. There are no other references to pain in the hand contained within the entire record.

There is one reference in the record to "pain the back of the shoulder" during the April 10, 2017 visit, nearly five months after vaccination. The QAI for SIRVA states that "SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.)." The back of the shoulder is part of the shoulder musculature and thus, Ms. Merson's complaint of pain does not fall outside the Table definition for SIRVA.

Accordingly, preponderant evidence establishes that Petitioner's pain and limited range of motion was limited to her left shoulder.

### 3.  There is No Evidence of Another Condition or Abnormality

The last criterion for a Table SIRVA states that there must be no other condition or abnormality which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent argues that Petitioner's "radiating symptoms that extend down her arm may suggest an alternative cause" such as a nerve injury. Opp. at 10-11. Respondent also argues that Petitioner's MRI findings "could also explain her symptoms." Opp. at 11. Respondent states that Ms. Merson had primary arthritis and a complete rotator cuff tear, neither of which could be caused by vaccination. *Id*. However, all of the arguments presented by Respondent are based on speculation and not any definitive diagnoses contained within the record. It is not Petitioner's burden to rule out all the possible alternative causes that Respondent may raise. The SIRVA criterion states that

a condition or abnormality must be *present that would explain her symptoms* (emphasis added). There is no evidence in the record confirming any nerve injury and there is no evidence that any of the conditions found on the MRI were present before vaccination that would lead Petitioner's shoulder symptoms after vaccination. Petitioner had no left shoulder symptomology prior to vaccination; a fact that Respondent does not dispute. Thus, I find there is no other condition or abnormality present that would explain Petitioner's symptoms.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly in her left shoulder on November 15, 2016. Ex. 1 at 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Petition at 3; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's left shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of her SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her left shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Respondent states that it is unclear whether Petitioner had vaccine-related pain that persisted for six months. Opp. at 15. Respondent argues that "[w]hile the special master concluded that petitioner did develop some pain within 48 hours of vaccination, he did not conclude that all of petitioner's symptoms are vaccine related." Opp. at 15. Therefore, "it is not clear if she also had vaccine-related pain that persisted for at least six months." *Id*.

My prior ruling, however, was clear and is set forth below:

> In light of all of the above, and in view of the submitted evidence, including the medical records, credible witness testimony, and findings of fact, I find that the onset of Petitioner's left shoulder pain was within 48 hours of her November 15, 2016 flu vaccination.

ECF No. 46 at 3. And starting from November 17, 2016 (48 hours after vaccination), the records undoubtedly demonstrate that Petitioner suffered the residual effects of her shoulder injury for more than six months. *See*, *e.g.*, Ex. 3 at 6-7 (Petitioner's MRI report of her left shoulder at Advance Radiology); Ex. 2 at 2 (records of Petitioner's appointment with Dr. Simmons). Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## V.     Damages

The parties have also briefed damages in this case, which is limited to claims for an award of actual pain and suffering plus past unreimbursable expenses. Petitioner requests $45,000.00 for her actual pain and suffering, and $257.28 for her past out-of-pocket medical expenses, for a total award of $45,257.28. Mot. at 10. Respondent proposed an award of $20,000.00 for pain and suffering. Opp. at 20. He does not object to Petitioner's request for $257.28 in unreimbursable expenses.

### A.  Legal Standards for Damages Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within the SPU. I fully adopt and hereby incorporate my prior discussion in Sections III and IV of *Leslie v. Sec'y Health & Hum. Servs.*, No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) and *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021), as well as Sections II and III of *Tjaden v. Sec'y of Health & Hum. Servs.,* No. 19-419V, 2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and

suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[8]

### B. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and considered the complete record in this case, including all medical records, declarations, plus all filings submitted by both Petitioner and Respondent. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

In her brief, Petitioner does not identify a specific case to be used as a comparison for her proposed award, but instead cites to 22 prior SPU SIRVA cases that are below the median award for SIRVA cases, ranging from $60,000.00 to $90,000.00. Mot. at 11-12. Petitioner states that she recognizes that she suffered a milder SIRVA injury, and that most of her treatment consisted of over-the-counter medications and an at home exercise program. *Id*. at 12. Thus, she believes her request for $45,000.00 in pain and suffering to be a reasonable amount. Her injury substantially impacted her day to day life, causing her to stop activities she once enjoyed such as cross-stitching, walking her dogs, caring for her grandchild, cooking, and driving. Ex. 9; Tr. at 19. Ms. Merson testified, and the medical records corroborate, that she is generally averse to seeking medical attention and thus waited quite a while before seeking treatment, which likely exacerbated her condition. Ex. 3 at 4; Ex. 10 at 4; Tr. at 29.

Respondent, by contrast, submits that the lesser sum of $20,000.00 is appropriate for pain and suffering. Opp. at 17. While Respondent cites and argues that pain and suffering awards outside the Program should be considered (and notes that they tend to be lower in magnitude), I find that awards issued *within* the Program are most persuasive. It is important to bear in mind that Vaccine Act claims are litigated within a no-fault program intended to be generous in many regards, resulting in a slightly different scale (that admittedly may produce higher award values than the non-Program comparables pointed to by Respondent). Thus, other reasoned decisions in the Vaccine Program provide the most useful guidance in reaching an award amount in this case.

---

[8] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

In this case, the record establishes that although Ms. Merson experienced the onset of shoulder pain almost immediately after vaccination, the fact that she waited so long to seek medical treatment and did not undergo any of the recommended treatment will have to be considered in calculating a pain and suffering award. To be clear, Ms. Merson should **not** be penalized for not seeking medical treatment right away. As she testified (and as corroborated by the medical record itself), she is a person who is generally averse to formal medical treatment, and thus avoids doctors. Ex. 3 at 4; Ex. 4 at 1; Ex. 5 at 1-2; Ex. 6 at 2; Tr. 59-61. The record also supports Ms. Merson's testimony that she does not like to take prescribed medications and does not like needles, which explains her reticence to undergo an EMG nerve conduction study and receive a steroid injection.

Nevertheless, I must base my decision in awarding damages upon the record -and what it "says" about the overall nature of a claimant's vaccine injury. In SIRVA cases featuring an extensive treatment history and proof of a large number of intervention efforts (e.g, multiple steroid injections, months of physical therapy, shoulder surgery and post-operative physical therapy), a larger award for pain and suffering is appropriate. In a case such as Ms. Merson's, by contrast, where the record is sparse and the evidence of pain and suffering is based mostly on testimonial evidence, it becomes much more difficult to justify the same magnitude of award.

Specifically, I take note of the fact that Ms. Merson did not seek medical treatment right away. While she discussed her shoulder injury with her psychiatrist, Dr. Gold, approximately four months after vaccination, she did not seek medical treatment until nearly five months after vaccination. Even considering Ms. Merson's aversion to formal medical treatment and her general avoidance of doctors, it remains the case that a very serious and painful injury **will** impel an individual to seek treatment – and thus the failure to do so is more reflective of a less-serious injury than the claimant's personal proclivities with respect to medical care generally. In addition, as Ms. Merson testified and the medical records show, that Ms. Merson's shoulder pain mostly subsided within seven months of vaccination. The worst of her symptoms appear to have subsided in less than a year, confirming that her injury was on the milder side of SIRVA injuries that this Program encounters. The sum demanded by Petitioner - $45,000.00 - is on the lower side of the median award in SIRVA cases, and thus reflects these concerns.

Respondent's proposed award of $20,000.00, by contrast, is simply too low. In other non-surgical SIRVA cases[9] where the total duration of the individual's SIRVA injury

---

[9] Case law is very helpful is such circumstances, as guidance for the shape of the award in this case. While both Petitioner and Respondent cite to numerous cases in their respective briefs, however, neither party sufficiently analyzed cases that would support their requested figures. Simply adding string cites and listing the amounts awarded for pain and suffering in each case is not particularly helpful. A detailed discussion

13

was less than one year, I have routinely awarded pain and suffering amounts in excess of $55,000.00. *See,* e.g*., Bartholomew v. Sec'y of Health & Hum. Servs.*, No. 18-1570V, 2020 WL 3639805, at *3 (Fed. Cl. June 5, 2020) ($67,000.00 in pain and suffering for a mild SIRVA injury of approximately eight months in duration); *Magee v. Sec'y of Health & Hum. Servs.,* No. 18-185V, 2020 WL 5031971, at *8 (Fed. Cl. July 21, 2020) ($65,000.00 in pain and suffering for a SIRVA injury of approximately seven months in duration); *Johnson v. Sec'y of Health & Hum. Servs.*, No. 18-1486V, 2021 WL 836891, at *7 (Fed. Cl. Jan. 25, 2021) ($65,000.00 in pain and suffering for a SIRVA injury of approximately six months duration).

Other cases demonstrate that an award comparable to what Petitioner demands has been appropriate even when the claimant self-treated for a period of time, or where the scope and extent of medical interventions was limited. *See,* e.g., *Rayborn v. Sec'y of Health & Hum. Servs*., No. 18-0226V, 2020 WL 5522948, at *11-12 (Fed. Cl. Aug. 14, 2020) ($55,000.00 in pain and suffering; petitioner opted to self-treat and use NSAIDs for the first four months after vaccination, and received one steroid injection and underwent 14 physical therapy sessions); *George v. Sec'y of Health & Hum. Servs.*, No. 18-0426V, 2020 WL 4692451, at *3 (Fed. Cl. July 10, 2020) ($67,000.00 for pain and suffering; majority of the petitioner's treatment consisted of physical therapy, and duration of her treatment lasted approximately seven months); *Russano v. Sec'y of Health & Hum. Servs.,* No. 18-0392V, 2020 WL 3639804, at *4 (Fed. Cl. June 4, 2020) ($80,000.00 for eight month-long SIRVA; petitioner's pain was fairly significant in the beginning but progressively eased over time).

The facts specific to this case support a lower award than in *Russano, George and Rayborn*. In *Russano*, the petitioner endured 23 physical therapy sessions, multiple X-rays, an MRI, and a cortisone injection, plus additional treatments for her inflammatory ear condition. *Id*. at * 3. In *George*, the petitioner underwent significant physical therapy and received a steroid injection. *Rayborn* is arguably the most comparable case, but even it is distinguishable, since that petitioner underwent physical therapy and received one steroid injection – none of which were included in Ms. Merson's treatment.

At bottom, although the limited scope of Petitioner's treatment does not support an award closely tracking these comparable cases, the amount I award reasonably takes into account the fact that Ms. Merson experienced months of shoulder pain, living with it until being prodded by her family to seek formal medical treatment. Thus, I find that her

---

of the facts of similar cases and the amounts awarded for pain and suffering would better me in reaching a fair and appropriate award.

requested amount of $45,000.00 for pain and suffering is fair and appropriate. (I also award the full amount of unreimbursed expenses, since they are not disputed).

## VI.  Conclusion

**In view of the evidence of record, I find Petitioner is entitled to compensation. I also find that, for all of the reasons discussed above and based on consideration of the record as a whole, $45,000.00 represents a fair and appropriate amount of compensation for Ms. Merson's actual pain and suffering. She is also awarded the full amount requested for her past unreimbursable medical expenses in the amount of $257.28. Petitioner is therefore awarded a total of $45,257.28.**

I approve a Vaccine Program award in the requested amount set forth above to be made to Petitioner. In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment herewith.[10]

**IT IS SO ORDERED.**

                                                      <u>s/Brian H. Corcoran</u>
                                                     Brian H. Corcoran
                                                     Chief Special Master

---

[10] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.